**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON A. FINIZIE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-5586** |
| | : | |
| **DENIS MCDONOUGH** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                          **September 30, 2022**

Registered nurse Sharon A. Finizie retired in October 2018 after working forty-one years for the Department of Veterans Affairs.  She repeatedly applied for positions as an infection control nurse since 1993 and the Department repeatedly denied her requests. She repeatedly complained to the Equal Employment Opportunity Commission because the Department denied her an infection control nurse position. She then repeatedly and unsuccessfully sued the Department for retaliation  We are now facing the last time the Department declined her April and June 2018 applications for the infection control nurse position. She now sues the Department for retaliation and gender and age discrimination. She continues to believe she is qualified for the infection control nurse position, but her employer continues to disagree for sound reasons based on her recent lack of experience. Her self-evaluation is not enough to show the Department retaliated against her or discriminated against her based on her age and gender when it selected other female nurses with more recent infection control nurse experience. Ms. Finizie does not adduce genuine issues of material fact for our jury to resolve. And she cannot meet her burdens of proof for discrimination and retaliation as a matter of law. We grant the Department's Motion for summary judgment and dismiss Ms. Finizie's retaliation and discrimination claims.

I.      **Undisputed material facts**[1]

Sharon Finizie worked for the Department of Veterans Affairs at the Corporal Michael J. Crescenz Medical Center in Philadelphia as a registered nurse from June 1977 until her retirement in October 2018.[2] She began her career at the Department as a staff nurse.[3] She then transitioned to a position as an infection control nurse in February 1981 for twelve and a half years.[4] The Department reassigned Ms. Finizie to a quality management specialist position in 1993.[5] Ms. Finizie remained in a quality management specialist position until she retired in October 2018.[6]

Ms. Finizie unsuccessfully applied for positions as an infection control nurse many times from 1993 until she retired in October 2018. She filed over twenty complaints with the Equal Employment Opportunity Commission against the Department during her career in response to not obtaining infection control nurse positions, along with other complaints related to her workspace, work assignments, and other issues.[7] Ms. Finizie last filed with the Commission in 2015 before her present challenge to the Department denying her a position as an infection control nurse in April 2018 and June 2018.[8]


***The Department did not select Ms. Finizie for the April 2018 infection control nurse vacancy.***

The Department posted an opening for an infection control nurse in April 2018. Then sixty-four-year-old Ms. Finizie again applied for a position as an infection control nurse.[9] She then held a Master of Science in Nursing degree, had twelve and a half years of past experience as an infection control nurse (from February 1981 to May 1993), and maintained a current national Certification in Infection Control along with a Certified Professional in Healthcare Quality certification at the time she applied for the position.[10]

The April 11, 2018 "Registered Nurse – Infection Control" posting's minimum requirements included United States citizenship, graduation from an accredited school of

professional nursing, and current, full, active, and unrestricted registration as a graduate professional nurse in a state, territory, or commonwealth of the United States.[11] Ms. Finizie met these minimum requirements.[12] The job posting also included "[c]urrent infection control experience in a tertiary care facility" in the "Preferred Experience" section.[13] Dr. Tracey Schoen served as the "deciding official" for the position and organized the recruiting and interview process for the vacancies.[14] Bruce Boxer selected Dr. Schoen for this position.[15] Dr. Schoen considered current infection control experience extremely important for filling this vacancy and determined hands-on infection control experience within five years fit this requirement.[16] Dr. Schoen testified recent hands-on experience is critical for infection control nurses because "infection control is constantly changing[.]"[17]

Thirty-four people applied for the job in April 2018.[18] Ms. Finizie made the applicant list, but the Department never interviewed her.[19] Only two candidates possessed recent infection control experience and one candidate declined the interview.[20] Dr. Schoen organized a three-person panel to interview the remaining candidate, Cynthia Hinkle.[21] The panel selected Ms. Hinkle for the position.[22] Ms. Hinkle held a bachelor's degree in nursing and current infection control experience spanning from 1989 to 2018.[23] Dr. Schoen testified "[i]t wasn't that [Ms. Finizie] didn't have something" but "the other applicants had more" when explaining why the Department did not select Ms. Finizie for the position.[24] Dr. Schoen admitted to hearing "rumors" of Ms. Finizie's complaints with the Commission although she claims she did not become aware of Ms. Finizie's previous activity with the Commission until after the Department already choose Ms. Hinkle for the position.[25]

### The Department issues Ms. Finizie's June 2016–June 2017 performance evaluation a year late in June 2018.

The Department issues performance evaluations including a proficiency report and employee competence assessment to evaluate the performance of its quality management nurses.[26] The Department conducted Ms. Finizie's performance evaluation in April 2018 for the June 5, 2016 through June 5, 2017 time period.[27] The Department gave the evaluation to Ms. Finizie in June 2018, a year later than she claims the Department should have.[28] Raymond Daiutolo, the assistant human resources manager at the Department, testified it is very common for supervisors to administer performance evaluations after their due date.[29] The Department delayed issuing many employee performance evaluations in the quality management department in 2018.[30]

Supervisor Boxer rated Ms. Finizie as high satisfactory in the categories of nursing practice and overall evaluation, but rated her as satisfactory in the interpersonal relationship category of her proficiency report.[31] Supervisor Boxer explained Ms. Finizie needed to work on interpersonal interactions including collaboration and "establish[ing] productive working relationships."[32] Ms. Finizie also received satisfactory ratings in every category on her employee competence assessment.[33] Ms. Finizie refused to sign both the proficiency report and the competence assessment.[34] Ms. Finizie unsuccessfully appealed her evaluation through the union grievance process.[35]

Assistant Human Resources Manager Daiutolo testified the proficiency reports are not part of the regular interview process and the interview panel for the infection control nurse vacancy should not have had it unless Ms. Finizie submitted it with her application.[36] Dr. Schoen testified no one provided her with this competency assessment.[37] She further testified the report or assessment would not have made an impact because she does not put "a lot of faith in what gets written in these plans."[38]

4

**The Department did not select Ms. Finizie for the June 2018 infection control nurse vacancy.**

The Department listed another opening for a "Registered Nurse – Infection Control" position on June 21, 2018 which closed on July 5, 2018.[39] The position contained the same minimum requirements as the April 2018 posting.[40] The job posting also included "current infection control experience in a tertiary care facility" in the "Preferred Experience" section.[41] Dr. Schoen remained in charge of the recruitment and interview process for this position.[42] Supervisor Boxer left the Department sometime in July 2018 and the Department selected Brian Gainsley as his interim replacement.[43]

Ms. Finizie applied for the position and again made the applicant list, but the Department never interviewed her.[44] A three-person panel interviewed three female candidates.[45] The panel ultimately selected Jeanine Edwards for the position who had current infection control experience working as an infection prevention practitioner since 2015.[46] Dr. Schoen testified she did not become aware of Ms. Finizie's previous complaints with the Commission until after the Department already chose Ms. Edwards for the position.[47]

**Ms. Finizie files an EEOC complaint and exhausts her administrative remedies.**

Ms. Finizie filed a formal complaint relating to the April 2018 and June 2018 vacancies with the Equal Employment Opportunity Commission on August 23, 2018.[48] She alleged the Department discriminated against her for her past Equal Employment Opportunity activity and discriminated against her based on her age and gender.[49] Ms. Finizie exercised her administrative appeal rights.[50]

### *The Department issues Ms. Finizie's June 2017 – June 2018 performances evaluation in September 2018.*

The Department issued Ms. Finizie's performance evaluations for June 5, 2017 through June 5, 2018 in September 2018, three months later than Ms. Finizie claims it should have been issued.[51] The Department contends it delayed issuing the evaluation because when Mr. Boxer left the Department his replacement Mr. Gainsley had not yet observed Ms. Finizie's work.[52] The Human Resource department asked Ms. Finizie to provide a self-evaluation and rate herself.[53] She rated herself as outstanding in nursing practice, interpersonal relationships, and her overall rating.[54] Mr. Gainsley signed off on the evaluation.[55]

### *Ms. Finizie sues the Department.*

The Commission granted summary judgment in favor of the Department dismissing Ms. Finizie's retaliation and discrimination claims on September 24, 2021.[56] Ms. Finizie sued the Secretary of the United States Department of Veteran Affairs on December 22, 2021 alleging the Department (1) retaliated against her in violation of the Equal Employment Opportunity Act; (2) discriminated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964; and (3) discriminated against her based on her age in violation of the Age Discrimination in Employment Act.[57] Ms. Finizie claims as a member of the American Federation of Government Employees Union the Department should have considered her as an internal candidate for selection but instead the Department passed over her despite being a qualified candidate.[58] Ms. Finizie, in support of her retaliation, age, and gender claims, argues Mr. Boxer rated her lower than he should have in the June 2016 through June 2017 evaluation because he used factors not applicable to the current rating period and gave her "unreasonable work demands" and failed to inform her of specific work assignments and then "criticized her" for failing to carry out those assignments.[59]

Ms. Finizie claims the June 2017 through June 2018 evaluation also contained "false, inaccurate, and misleading statements" and "again measured her performance against an inapplicable standard."[60]

Ms. Finizie seeks compensatory, punitive, and liquidated damages; damages for pain and suffering; reasonable attorney's fees and costs; pre and post-judgment interest; placement into an infection preventionist (RN) position; a revised Proficient Report and Employee Competency Assessment to accurately reflect her performance for the period June 5, 2016 through June 5, 2017 and for the period of June 5, 2017  through June 5, 2018; and an order rescinding the Performance Improvement Plan issued on September 26, 2018.[61]

## II.     Analysis

The Department moves for summary judgment.[62] The Department argues: (1) the Department had valid, non-retaliatory reasons for choosing other nurses for the 2018 infection control nurse vacancies, and (2) Ms. Finizie offers no evidence of either gender or age discrimination.[63] Ms. Finizie responds Dr. Schoen knew of her past activity with the Commission but set arbitrary hiring criteria and excluded Ms. Finizie from the position despite being qualified for the position.[64] Ms. Finizie claims "[u]nlawful discrimination against [her] is the only explanation for how [she] has been treated by [the Department]."[65]

Ms. Finizie presents no genuine issues of material fact and the Department is entitled to judgment as a matter of law on Ms. Finizie's claims under Title VII and the Age Discrimination in Employment Act. Ms. Finizie fails to adduce evidence the Department retaliated against her based on her earlier activity with the Commission or discriminated against her based on her gender or age when it selected two female nurses for the infection control nurse vacancies with much more recent and current experience.

**A.      We grant summary judgment dismissing Ms. Finizie's retaliation claim.**

Ms. Finizie claims the Department intentionally discriminated against her based on her earlier complaints with the Commission by including the language "current infection control experience in a tertiary care facility" in the preferred experience section of the April 2018 and June 2018 vacancy announcements.[66] She argues Dr. Schoen knew of her earlier complaints with the Commission and established this criteria in an "arbitrary and capricious manner for the purpose of excluding her from consideration."[67]

Congress in Title VII prohibits employers from discriminating "against any individual . . . because [s]he has opposed any . . . unlawful employment practice . . . or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[68] We analyze retaliation claims under Title VII using the *McDonnell Douglas* burden shifting framework.[69] Ms. Finizie must first establish a *prima facie* case of discrimination. To proceed to trial on a *prima facie* case of Title VII retaliation Ms. Finizie must show: "(1) she engaged in activity protected by Title VII; (2) [the Department] took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."[70]

If Ms. Finizie meets this burden, the burden shifts back to the Department to provide a legitimate, non-retaliatory reason for the adverse employment actions.[71] If the Department does so, the burden shifts back to Ms. Finizie to convince us "the [the Department's] proffered explanation was false [a pretext], and that retaliation was the real reason for the adverse employment action."[72] To discredit the Department's proffered reason Ms. Finizie cannot simply show the Department made a wrong or mistaken decision "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd,

prudent, or competent."[73] Ms. Finizie must instead demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Department's] proffered legitimate reasons for its action," so "a reasonable factfinder could rationally find them 'unworthy of credence.'"[74] Ms. Finizie's personal view the Department acted unfairly does not suffice to show pretext.[75]

### a.   Ms. Finizie fails to show a *prima facie* case of retaliation.

Ms. Finizie engaged in protected activity under Title VII by filing over twenty Equal Employment Opportunity complaints based on the Department not selecting her for the infection control nurse positions and other issues.[76] The Department concedes Ms. Finizie satisfies prong one of her *prima facie* retaliation claim.[77] The Department also concedes under the United States Supreme Court's holding in *Burlington Northern and Santa Fe Ry. Co. v. White*, the Department's decisions not to select Ms. Finizie for the two vacancies could be considered "materially adverse" under prong two of her *prima facie* case.[78] The parties' dispute thus centers on whether Ms. Finizie can establish a causal connection between her participation in the protected activity and the adverse employment action under prong three of her *prima facie* case.

Ms. Finizie must provide "some evidence [] the individuals responsible for the adverse action knew of [her] protected conduct at the time they acted" under prong three of her *prima facie* case.[79] Ms. Finizie must then demonstrate a link between her protected activity and her rejection for the 2018 vacancies by either (1) "pointing to an 'unusually suggestive' temporal proximity between the protected activity and adverse action," or (2) establishing "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."[80] Ms. Finizie must "proffer evidence sufficient

9

to raise the inference [] her engagement in a protected activity was the *likely reason* for the adverse employment action" to establish a causal connection under the third prong of her *prima facie* case.[81] Ms. Finizie needs to present evidence showing "but for" her filing of her complaint her employer would have hired her for the positions she sought.[82]

Our Court of Appeals in *D'Ambrosio v. Crest Haven Nursing & Rehabilitation Center* held an employee could not establish a causal connection between her denial of two positions and her filing a complaint with the Commission when ample evidence in the record showed her employer selected another more qualified candidate for a position.[83] In *D'Ambrosio*, the employee sought two separate positions as a scheduling coordinator and a finance director.[84] Her employer selected someone with more relevant experience for the scheduling coordinator role and, since the employee had no background in finance, it selected someone with finance experience for the finance director position.[85] The court held even if the employee did not file her claim with the Commission she could not show her employer would have selected her for either position.[86]

Close temporal proximity may be suggestive of causation.[87] But even seemingly short periods of time between the protected activity and the adverse action alone is not enough to demonstrate this causal connection.[88] For example, in *Petti v. Ocean County Board of Health* the employee failed to establish a *prima facie* case of Title VII retaliation because she failed to show her employer likely terminated her because she filed a complaint with the Public Employees Occupational Safety and Health Program.[89] Our Court of Appeals held six months passed between employee's filing of the complaint and the employer's initiation of her termination proceedings and this timeframe alone could not establish her employer likely fired her because she filed the complaint.[90] In *Motto v. Wal-Mart Stores E., LP,* our Court of Appeals held an even shorter timeframe of eleven days not "unusually suggestive of retaliatory motive[.]"[91] The employee in

*Motto* claimed the eleven-day period between his sexual harassment complaint and termination proved causation.[92] Our Court of Appeals disagreed and held the timing by itself insufficient to establish a causal link and the employee failed to present any evidence of antagonism or retaliatory animus in the intervening time.[93]

Ms. Finizie has shown she (1) engaged in protected activity by filing many complaints with the Commission, with the most recent before this action filed in 2015; and (2) suffered an adverse action when the Department twice rejected her for the infection control nurse position in 2018. Ms. Finizie has also shown people within the Department, including Dr. Schoen, knew of her earlier complaints with the Commission. Dr. Schoen admitted to hearing "rumors" of Ms. Finizie's complaints with the Commission.[94] The Department concedes people within the Department knew about Ms. Finizie's previous activity with the Commission given Ms. Finizie's extensive history of filing complaints with the Commission.[95] It is also possible the other individuals on the interview panels knew of her past activity although Dr. Schoen testified she heard the rumors after the Department filled the two vacancies.[96]

But Ms. Finizie cannot show a causal connection with this fact alone. Ms. Finizie fails to show "unusually suggestive" temporal proximity between her protected activity and not being selected for the two 2018 vacancies. Ms. Finizie filed her last complaint with the Commission in 2015 nearly three years before applying for the 2018 vacancies.[97] Even more time passed since Ms. Finizie filed her latest complaint with the Commission than in *Petti* and *Motto.*

Ms. Finizie points to her two late performance evaluations to perhaps show some evidence of antagonism or retaliatory animus, but she points to no evidence to rebut Dr. Schoen's testimony she did not rely on the June 2016 through June 2017 evaluations during the selection process.[98] And Dr. Schoen could not rely on the June 2017 through June 2018 evaluations during the selection

process since the Department issued it in September 2018 after Dr. Schoen had already filled both vacancies.[99] Dr. Schoen testified even if she saw the evaluations it would not have made an impact on her decisions because she does not put "a lot of faith in what gets written in [those] plans."[100]

Like *D'Ambrosio*, there is ample evidence the Department did not select Ms. Finizie for the two vacancies because the Department viewed other applicants as more qualified for the infection control nurse positions given their more current experience. Both candidates selected had current infection control experience which Ms. Finizie lacked. Ms. Finizie, like the employee in *D'Ambrosio*, fails to present evidence showing but for her previous activity with the Commission the Department would have selected her for the positions.

Ms. Finizie points to no evidence other than her own subjective belief Dr. Schoen did not hire Ms. Finizie for the two 2018 vacancies because of her earlier complaints to the Commission. Ms. Finizie fails to show inconsistencies in the reasons the Department gave for not hiring her or other evidence suggesting the Department had a retaliatory animus. Nothing in the record supports Ms. Finizie's belief the Department set arbitrary hiring criteria and did not hire her for the positions because of her earlier complaints with the Commission.

### b.     The Department offered a legitimate, non-retaliatory reason for not hiring Ms. Finizie for the April 2018 and June 2018 vacancies.

Ms. Finizie still fails to adduce credible evidence of retaliation even if we looked beyond her *prima facie* case. The Department provided a legitimate, non-retaliatory reason for not hiring Ms. Finizie for the April 2018 and June 2018 vacancies: the Department viewed the two candidates who secured the positions as better qualified for the role because they had more recent infection control nurse experience.[101]

Ms. Finizie must now point to some evidence, direct or circumstantial, from which we could reasonably either "(1) disbelieve the [the Department's] articulated legitimate reasons; or

(2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[102] Our Court of Appeals has repeatedly held an employer successfully demonstrated a legitimate, non-retaliatory reason when ample evidence in the record showed the employer selected another more qualified candidate for a position.[103] Since the Department "is permitted to decide which job criteria are important and to determine what skill set is most appropriate for a given position[,]" Ms. Finizie "cannot establish pretext simply from the fact [the Department] valued [other nurses'] skills and experiences over the skills and experiences [she] brought to the table."[104] Ms. Finizie's unsupported subjective belief the Department did not hire her for retaliatory reasons falls short of establishing pretext.[105]

Our Court of Appeals in *Steele v. Pelmor Laboratories Inc.* held an employee seeking a vice president position could not credibly claim she held more qualifications than her competitor to prove pretext under Title VII because her competitor had more significant managerial experience.[106] The employee did not have the experience in high-level managerial positions needed for the job despite having longer experience working in the company.[107] The court reasoned although an employee may believe she is better qualified for a job, she needs more to establish pretext.[108] To demonstrate pretext the employee must show the qualifications of the person actually promoted were so much lower than those of her competitors for a reasonable factfinder to disbelieve the claim the employer honestly sought the best qualified candidate.[109]

Ms. Finizie offers no evidence from which we could reasonably disbelieve the Department's articulated legitimate, non-retaliatory reason. Both candidates hired for the vacancies had more recent infection control nurse experience than Ms. Finizie.[110] Ms. Finizie responds Dr. Schoen's "subjectively" and "arbitrarily" set the qualification standards for the two vacancies to exclude Ms. Finizie.[111] But Dr. Schoen explained how recent hands-on experience is

critical for infection control nurses because "infection control is constantly changing[.]"[112] Dr. Schoen explained she required five years recent experience in the infection control space because she wanted the person hired to be the "most qualified" and the "best person" for the position.[113] And although Ms. Finizie met the minimum qualifications for the position she did not have recent experience in the infection control space and "the other applicants had more."[114]

Like the employee in *Steele*, Ms. Finizie cannot establish pretext based on her view she held more qualifications than the two women the Department selected for the positions. Although Ms. Finizie had twelve-and-a-half years' experience as an infective control nurse, she last worked in this position nearly twenty-five years ago. The two candidates selected for the positions both had current experience in the infection control space. Ms. Hinkle, selected to fill the April 2018 vacancy, had twenty years of current infection control experience from 1989 to 2018.[115] Ms. Edwards, hired for the June 2018 vacancy, had current infection control experience since February 2015.[116]

Ms. Finizie offers no evidence to support her claim the Department emphasized current infection control experience to purposefully exclude Ms. Finizie from the position based on her previous activity with the Commission. Ms. Finizie offers no evidence from which we could reasonably disbelieve the Department's articulated legitimate, non-retaliatory reason. Ms. Finizie cannot establish pretext based on her subjective view she held more qualifications than the two women the Department selected for the positions.[117]

We grant the Department's motion for summary judgment on Ms. Finizie's retaliation claim because Ms. Finizie cannot establish either a *prima facie* case, or alternatively, demonstrate pretext for the Department's legitimate, non-retaliatory reason for selecting other nurses to fill the two vacancies.

**B.    We grant summary judgment dismissing Ms. Finizie's gender discrimination claim.**

Ms. Finizie claims the Department intentionally discriminated against her based on her gender.[118] Ms. Finizie does not clearly articulate how the Department discriminated against her based on her gender when the Department hired two other women for the infection control nurse vacancies. Ms. Finizie instead points to her untimely performance evaluations which she alleges contained "false, inaccurate, and misleading statements" and can have a "detrimental effect" on an employee's record and advancement.[119] She claims gender discrimination because she suffered "adverse actions" due to the Department treating her differently from similarly situated employees because "they were not subject to the same demands" as Ms. Finizie.[120] She argues "[t]here is no legitimate reason" for the Department's actions which "can only be explained as [the Department's] discrimination against [Ms. Finizie] due to her status as a member of a protected class."[121]

Congress through Title VII makes it unlawful for an employer to discharge or "otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin."[122] Gender discrimination claims, like retaliation claims, are analyzed under the *McDonnell Douglas* burden shifting framework.[123] To establish a *prima facie* case of gender-based employment discrimination, Ms. Finizie must show: (1) she is a member of a protected class; (2) she held the qualifications for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances which could give rise to an inference of intentional discrimination.[124] Ms. Finizie must establish "some causal nexus" between membership in the protected class and the decision not to be hired for the two vacancies.[125] If Ms. Finizie establishes her *prima facie* case, the burden shifts to the Department to show a legitimate, non-discriminatory

reason for the adverse employment action.[126] Ms. Finizie then must the show the given reason is pretext for discrimination.[127]

To support an inference of discrimination, employees generally present comparator evidence, or evidence the employer treated "similarly situated individuals not within [the employee's] protected class more favorably than it treated [the employee]."[128] In the absence of comparator evidence, Ms. Finizie may present, "evidence of similar [gender] discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting [gender] animus."[129]

We can readily draw a distinction from Judge Beetlestone's analysis in *Mammen v. Thomas Jefferson University*. Judge Beetlestone found a female employee alleging gender-based termination offered enough evidence to support an inference of discrimination.[130] In *Mammen*, the employee testified when she complained about gender discrimination her department chair stated "he's sick of hearing how women have it worse" and "sick of having the women discussion" and she should be "grateful" and say "thank you" more.[131] Although Judge Beetlestone acknowledged an employer's gender-based remarks do not "inevitably prove" gender played a role in a particular employment decision she also considered how the department chair made the remarks directed specifically at the employee during a meeting where she raised concerns about gender discrimination just months before her termination.[132] The employee also testified to witnessing other women experience gender discrimination, presented evidence on how males predominately dominated leadership positions, and testified about how her employer treated male employee complaints differently than female employee complaints.[133]

Ms. Finizie establishes the first three prongs of her *prima facie* case: (1) she is in the protected class as a female; (2) met the minimum qualifications for the infection control nurse

position; and (3) the Department did not select her for the two infection control nurse vacancies.[134] Ms. Finizie points to her performance reviews from which she claims an inference of unlawful discrimination because they had a detrimental effect on her record and advancement within the Department.[135]

But Assistant Human Resources Manager Daiutolo testified the performance evaluations are not part of the regular interview process and Dr. Schoen confirmed no one provided her with Ms. Finizie's competency assessment.[136] Ms. Finizie offers no evidence demonstrating Dr. Schoen or anyone on the interview panel relied on her evaluations or discriminated against Ms. Finizie because of her gender. She also fails to acknowledge the Department selected two other *women* who had more recent infection control experience to fill the positions.

Ms. Finizie also fails to point to anything in the record to demonstrate the Department treated her differently in her performance reviews and subsequently did not hire her for the open positions because she is a female. She only offers the affidavit of a co-worker, Ms. Kocher, who swears Mr. Boxer "behaved in a very agitated and abusive manner."[137] She observed (although unclear when) Mr. Boxer "put both of his hands and his knee across his desk and crawled across it toward Ms. Finizie appearing as if he was going to assault her."[138] Ms. Kocher also observed Mr. Boxer screaming at another colleague, Karen Clinkscales, an older woman and generally swears "Mr. Boxer consistently discriminated against older females, yet he treated all males very favorably in the [D]epartment."[139]

Unlike in *Mammen* where the employee presented evidence to give rise to an inference of discrimination, Ms. Finizie's evidence shows Mr. Boxer may have been unpleasant. But Ms. Finizie does not present enough evidence to support an inference of discrimination when the Department chose not to hire her for the infection control nurse vacancies or issued her late

performance evaluations. Congress through Title VII "prohibits discrimination, it does not regulate interpersonal relations at the workplace nor command general good manners."[140] Although Ms. Kocher swore Mr. Boxer "treated all males very favorably" she offers no comparator evidence about how he treated them differently than women. Ms. Kocher's affidavit instead is largely conclusory and lacks specific facts which is insufficient to defeat summary judgment.[141] Ms. Finizie has failed to put forth sufficient evidence from which a reasonable factfinder could draw an inference of unlawful discrimination based on her gender.

Ms. Finizie's gender discrimination claim fails even if we looked beyond her *prima facie* case. Ms. Finizie again offers no evidence from which we could reasonably disbelieve the Department's articulated legitimate, non-discriminatory reason for not hiring her as we discussed at length when reviewing her retaliation claim. The Department choose the other candidates because they had current infection control nurse experience.[142] Ms. Finizie cannot establish pretext based on her subjective view she held more qualifications than the two women the Department selected for the positions.[143] We grant the Department's motion for summary judgment on Ms. Finizie's gender discrimination claim because Ms. Finizie cannot establish either a *prima facie* case, or demonstrate pretext for the Department's legitimate, non-discriminatory reason for selecting other nurses to fill the two vacancies.

### C.   We grant summary judgment dismissing Ms. Finizie's age discrimination claim.

Ms. Finizie also alleges the Department discriminated against her because of her age.[144] Ms. Finizie does not clearly articulate how the Department discriminated against her based on her age when the Department hired two other women above the age of fifty for the infection control nurse vacancies. She again points to her late issued performance evaluations and argues "discrimination against older women is rampant at [the Department]" and "unlawful

discrimination against [her] is the only explanation for how [she] has been treated by [the Department]."[145]

Congress through the Age Discrimination in Employment Act makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[146] Since Ms. Finizie does not have any direct evidence of age discrimination, she must prove her claim through circumstantial evidence.[147] We again apply the three-part *McDonnell Douglas* framework to Ms. Finizie's age discrimination claim.[148] Ms. Finizie must first establish a *prima facie* case of age discrimination which requires Ms. Finizie show she (1) is over forty; (2) qualified for the infection control nurse position; (3) suffered from an adverse employment decision; and (4) the Department replaced her with someone sufficiently younger to permit a reasonable inference of age discrimination.[149] Ms. Finizie's own belief, without supporting evidence, is insufficient to establish an inference of discrimination.[150] If Ms. Finizie establishes her *prima facie* case the burden shifts to the Department to show a legitimate, nondiscriminatory reason for its adverse employment decision.[151] If the Department does so, the burden shifts back to Ms. Finizie to show the Department's proffered reason is pretext.[152]

We are also persuaded by Judge McHugh's reasoning in *Gardner v. Ulta Salon, Cosmetics & Fragrance, Inc.* confirming an employee's "own belief, without supporting evidence, is insufficient to establish an inference of discrimination."[153] In *Gardner*, an employee sued her employer for age-based discrimination but offered no evidence to establish her employer replaced her with someone younger.[154] Judge McHugh recognized the employee could still support the fourth prong of her *prima facie* case by providing evidence which raises the inference of age-based discrimination.[155] The employee felt her employer treated her differently as one of the oldest

employees but could not point to "specific examples to substantiate this feeling."[156] Judge McHugh held since the employee failed to provide "evidence of age-related remarks or favorable treatment of younger comparators for reasons of age" she failed to raise an inference of discrimination.[157]

Ms. Finizie establishes the first three prongs of her *prima facie* case because she (1) she is over forty and applied for the two positions at age sixty-four and again at age sixty-five; (2) met the minimum qualifications for the infection control nurse position; and (3) the Department selected two other applicants for the vacancies. But Ms. Finizie fails to demonstrate the Department replaced her with someone sufficiently younger to permit a reasonable inference of age discrimination. Ms. Finizie does not dispute the Department chose two women over the age of fifty to fill both vacancies.[158] She offers no evidence the Department chose someone sufficiently younger than her to fill the positions. We do not even know the exact ages of the individuals chosen for the positions since it appears Mr. Finizie never took discovery of these two women to support her age discrimination claim.

Like the employee in *Gardner,* Ms. Finizie offers no evidence of age-related remarks or specific examples of favorable treatment of younger employees at the Department. Ms. Finizie's feeling alone the Department did not hire her for the two vacancies is not enough and she needs "specific examples to substantiate this feeling."[159] Ms. Finizie instead largely relies on Ms. Kocher's affidavit as she did for her gender discrimination claim. Ms. Kocher swears "Mr. Boxer consistently discriminated against older females, yet he treated all males very favorably in the department."[160] But this conclusory statement and the affidavit more generally do not offer specific examples as to how anyone at the Department including Mr. Boxer or Dr. Schoen favored younger employees over older employees. Ms. Finizie has failed to raise an inference of discrimination

without offering any evidence of age-related remarks or specific examples of favorable treatment of younger employees at the Department.

Ms. Finizie cannot overcome the legitimate, non-discriminatory reason offered by the Department even assuming she could establish a *prima facie* case for age discrimination. The Department choose the other candidates because they had current infection control nurse experience and Ms. Finizie fails to present any credible evidence to rebut this decision. Ms. Finizie offers no evidence other than her subjective belief the Department passed over her because of her age. This is not enough. Since Ms. Finizie cannot establish either a *prima facie* case of age discrimination or, alternatively, pretext for the Department's legitimate, non-discriminatory reason we grant the Department's motion for summary judgment on Ms. Finizie's age discrimination claim.

## III.    Conclusion

Sharon Finizie at age sixty-four and again at sixty-five applied for two open positions as an infection control nurse with the Department in April and June 2018. Ms. Finizie had last worked as an infection control nurse nearly twenty-five years ago in 1993. The Department denied her applications and hired two other nurses with current infection control nurse experience to fill the vacancies. The Department adduces undisputed evidence recent infection control experience is critical in filling these positions because infection control is constantly changing. The Department defined "recent" as within the last five years.

Ms. Finizie claims the Department rejected her for these positions in retaliation for her past Equal Employment Opportunity activity with her most recent filing in 2015. Ms. Finizie also claims the Department discriminated against her based on her age and gender when it issued two late performance reviews which had a detrimental effect on her advancement within the

Department. Ms. Finizie appears frustrated with the ratings she received on these reviews and their untimeliness but fails to offer any evidence of age or gender discrimination.

We find no genuine issues of facts material to Ms. Finizie's claims. She fails to establish retaliation, age, or gender discrimination under federal law. We enter summary judgment in favor of her former employer Department and dismiss Ms. Finizie's claims under Title VII and the Age Discrimination in Employment Act.

---

[1] Our Policies require a Statement of Undisputed Facts ("SUMF") and appendix in support of summary judgment. The Department filed its SUMF at ECF Doc. No. 25 ("Department SUMF") and submitted its appendix in support of its motion for summary judgment at ECF Doc. No. 26. Ms. Finizie responded to the Department's SUMF at ECF Doc. No. 30 ("Finizie Response to SUMF").

[2] Department SUMF ¶¶ 1, 4; ECF Doc. No. 26 at 20–21.

[3] ECF Doc. No. 26 at 20–21.

[4] *Id*.

[5] Finizie Response to SUMF ¶ 3; ECF Doc. No. 26 at 20–21.

[6] Department SUMF ¶ 4; Finizie Response to SUMF ¶ 4.

[7] Department SUMF ¶ 5; Finizie Response to SUMF ¶ 5.

[8] ECF Doc. No. 24 at 15.

[9] Department SUMF ¶ 26.

[10] ECF Doc. No. 26 at 20–21.

[11] Department SUMF ¶ 22.

[12] ECF Doc. No. 26 at 20–21.

[13] *Id*. at 24.

[14] ECF Doc. No. 26 at 80. The parties disagree over whether the Department appointed Dr. Schoen as the "selecting official" for the vacancies. *See* Department SUMF ¶ 17; Finizie Response to SUMF ¶ 17. The Department claims Dr. Schoen held the position of selecting official for both the

April 2018 and June 2018 vacancies. Department SUMF ¶ 17. But Ms. Finizie claims the Director of Quality Management is always the selecting official and the Director of the Medical Center is always the approving official which would make Bruce Boxer the selecting official and Daniel Hendee the approving official for the April 2018 position and Brian Gainsley the selecting official and Karen Oxler the approving official for the June 2018 position. Finizie Response to SUMF ¶ 17. Dr. Schoen testified Mr. Boxer selected her as the "deciding official" for the vacancy. *See* ECF Doc. No. 26 at 80.

[15] ECF Doc. No. 26 at 80. Bruce Boxer supervised Ms. Finizie as the director of quality management at the Department from January 2017 until July 2018. *See* ECF Doc. No. 24 at 9; ECF Doc. No. 29-3 at 51–52. Ms. Finizie's co-worker, Florence Kocher, swears Mr. Boxer "behaved in a very agitated and abusive manner" and purposefully interrupted employees with "prolonged loud screaming." ECF Doc. No. 29-3 at 51–52. She swears he "consistently discriminated against older females, yet he treated all males very favorably in the [D]epartment." *Id*. Co-worker Kocher observed at some unidentified time Mr. Boxer "put both of his hands and his knee across his desk and crawled across it toward Ms. Finizie appearing as if he was going to assault her." *Id*. Co-worker Kocher also observed at some undefined time Mr. Boxer screaming at another colleague, Karen Clinkscales, an older woman who the Department hired in 2018. *Id*. Co-worker Kocher swears Mr. Boxer told co-worker Clinkscales "[i]f you are sick, you are to come to work and throw up in a trash can." *Id*. Co-worker Kocher also swears Mr. Boxer accused Ms. Finizie and her of collusion following an unknown incident on October 5, 2016 involving another co-worker Patricia Simon. *Id*.

[16] ECF Doc. No. 26 at 81–82.

[17] *Id*. at 82.

[18] Department SUMF ¶ 25.

[19] *Id*. ¶¶ 30–32.

[20] *Id*. ¶¶ 30–31.

[21] *Id*. ¶ 32.

[22] *Id*.

[23] *Id*.; ECF Doc. No. 26 at 40–41.

[24] ECF Doc. No. 26 at 83.

[25] *Id*. at 82–83; ECF Doc. No. 29-3 at 5–6.

[26] Department SUMF ¶ 41; Finizie Response to SUMF ¶ 41.

[27] ECF Doc. No. 26 at 8–15.

[28] *Id*.; ECF Doc. No. 29-1 at 12–13.

[29] ECF Doc. No 26 at 76.

[30] Department SUMF ¶ 46. Ms. Finizie disagrees the Department commonly issued late evaluations, but she admits the Department delayed issuing many employee evaluations in the quality management department in 2018. *See* Finizie Response to SUMF ¶¶ 45–46.

[31] Department SUMF ¶¶ 43, 47; ECF Doc. No. 26 at 8–15.

[32] ECF Doc. No. 26 at 14.

[33] Department SUMF ¶ 44; ECF Doc. No. 26 at 16–19.

[34] Department SUMF ¶¶ 43, 44; ECF Doc. No. 26 at 8–19.

[35] Department SUMF ¶ 48.

[36] ECF Doc. No. 26 at 77–78.

[37] ECF Doc. No. 29-3 at 11.

[38] *Id.*

[39] Department SUMF ¶ 33.

[40] ECF Doc. No. 26 at 46–47.

[41] *Id.* at 47.

[42] Department SUMF ¶ 17; Finizie Response to SUMF ¶ 17.

[43] Finizie Response to SUMF ¶ 17; ECF Doc. No. 24 at 10.

[44] ECF Doc. No. 17 ¶ 7; ECF Doc. No. 26 at 56–59.

[45] Department SUMF ¶ 39; ECF Doc. No. 26 at 56–59.

[46] Department SUMF ¶ 3.

[47] ECF Doc. No. 26 at 82–83; ECF Doc. No. 29-3 at 5–6.

[48] ECF Doc. No. 1 ¶ 9.

[49] *Id.* ¶ 9.

[50] *Id.* ¶¶ 10–11.

[51] *Id.* ¶ 35.

[52] Department SUMF ¶ 50.

[53] ECF Doc. No. 26 at 71.

[54] *Id.*

[55] *Id.*

[56] ECF Doc. No. 1 ¶¶ 10–11.

[57] ECF Doc. No. 1; *see also* 42 U.S.C. §§ 2000e-2–3(a); 29 U.S.C. § 623(a)(1). We note Ms. Finizie unsuccessfully litigated similar retaliation claims against the Department related to her non-selection for the infection control nurse position. *See, e.g., Finizie v. Sec'y, United States Dep't of Veterans Affs.*, 751 F. App'x 300, 303 (3d Cir. 2018) (affirming Judge Robreno's grant of summary judgment for the Department on Ms. Finizie's retaliation claim); *Finizie v. Shineski*, 351 F. App'x 668, 673 (3d Cir. 2009) (affirming Judge Dalzell's grant of summary judgment for the Department on Ms. Finizie's retaliation claim); *Finizie v. Principi*, 69 F. App'x 571, 575 (3d Cir. 2003) (affirming denial of motion for a new trial following bench trial where Judge Dalzell entered judgment for the Department on Mr. Finizie's retaliation claim); *Finizie v. McDonough*, No. 20-6513 (E.D. Pa. June 17, 2022) (Judge Younge granting summary judgment to the Department on Mr. Finizie's retaliation claim).

[58] ECF Doc. No. 1 ¶¶ 22–26.

[59] *Id.* ¶¶ 32–34.

[60] *Id.* ¶¶ 35–36.

[61] ECF Doc. No. 1. Ms. Finizie alleges in her complaint she received a Performance Improvement Plan on September 26, 2018. *See* ECF Doc. No. 1 ¶ 37. The Department believes this is an error derived from another Department employee represented by the same counsel as Ms. Finizie. *See* ECF Doc. No. 24 at 10, n.2. We also find Ms. Finizie failed to provide any evidence of this Performance Improvement Plan.

[62] ECF Doc. No. 24. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)).

If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[63] ECF Doc. No. 24 at 13–20.

[64] ECF Doc. No. 29-1 at 10–11.

[65] *Id.* at 12.

[66] ECF Doc. No. 1 ¶¶ 13–15.

[67] ECF Doc. No. 29-1 at 9–11.

[68] 42 U.S.C. § 2000e-3(a).

[69] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Egelkamp v. Archdiocese of Phila.*, No. 19-3734, 2021 WL 1979422, at *9 (E.D. Pa. May 18, 2021) (citing *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)).

[70] *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (citation omitted)).

[71] *Carvalho-Grevious*, 851 F.3d at 257 (citing *Moore*, 461 F.3d at 342).

[72] *Id.* (citing *Moore*, 461 F.3d at 342).

[73] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

[74] *Id.*

[75] *Mulcahy v. Skipper*, No. 21-2788, 2022 WL 3081873, at *2 (3d Cir. Aug. 3, 2022) (internal citations omitted).

[76] Department SUMF ¶ 5; ECF Doc. No. 26 at 69–70.

[77] ECF Doc. No. 24 at 14.

[78] *Id.*; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). The Supreme Court in *Burlington Northern* held the anti-retaliation provision of Title VII covers employer actions considered "materially adverse to a reasonable employee or job applicant." *Id.* This means the employer's actions are harmful to the point where it could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

[79] *Chambers v. Pennsylvania*, No. 19-2867, 2020 WL 4699045, at *6 (E.D. Pa. Aug. 13, 2020) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015)).

[80] *Id.* (citing *Daniels*, 776 F.3d at 196).

[81] *Petti*, 831 F. App'x at 64 (quoting *Carvalho-Grevious*, 851 F.3d at 253) (emphasis in original)).

[82] *Mazur v. Sw. Veterans Ctr.*, 803 F. App'x 657, 662 (3d Cir. 2020) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)); *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 152–53 (3d Cir. 2018).

[83] *D'Ambrosio*, 755 F. App'x at 152–53.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 153.

[87] *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) ("Close 'temporal proximity,' between the protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation." (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000))).

[88] *See e.g., Petti*, 831 F. App'x at 64 (six months); *Motto v. Wal-Mart Stores E., LP*, 563 F. App'x 160, 163 (3d Cir. 2014) (eleven days).

[89] *Petti*, 831 F. App'x at 64.

[90] *Id.*

[91] *Motto*, 563 F. App'x at 163.

[92] *Id.*

[93] *Id.* at 163–64.

[94] ECF Doc. No. 26 at 82–83; ECF Doc. No. 29-3 at 5–6.

[95] ECF Doc. No. 24 at 15.

[96] ECF Doc. No. 26 at 82–83; ECF Doc. No. 29-3 at 5–6.

[97] ECF Doc. No. 24 at 15.

[98] ECF Doc. No. 29-3 at 11.

[99] ECF Doc. No. 26 at 71.

[100] ECF Doc. No. 29-3 at 11.

[101] ECF Doc. No. 24 at 16–17.

[102] *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 840 (3d Cir. 2004) (quoting *Fuentes*, 32 F.3d at 764)

[103] *Id.*; *see also D'Ambrosio*, 755 F. App'x at 152–53.

[104] *Nunn v. NHS Hum. Servs., Inc.*, 110 F. Supp. 3d 554, 568 (E.D. Pa. 2015).

[105] *James v. Sutliff Saturn, Inc.*, 468 F. App'x 118, 121 (3d Cir. 2012) (internal citations omitted).

[106] *Steele v. Pelmor Lab'ys Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016).

[107] *Id.*

[108] *Id.*

[109] *Id.* (citing *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir.1997) (Alito, J., dissenting)).

[110] ECF Doc. No. 26 at 40–41, 60–61.

[111] ECF Doc. No. 29-1 at 10.

[112] ECF Doc. No. 26 at 82–83.

[113] *Id.*

[114] *Id.* at 83.

[115] *Id.* at 40–41.

[116] *Id.* at 60–61.

[117] *James*, 468 F. App'x at 121 (internal citations omitted).

[118] ECF Doc. No. 1 ¶¶ 29–46.

[119] *Id.* ¶¶ 32–43; ECF Doc. No. 29-1 at 13.

[120] ECF Doc. No. 1 ¶ 42.

[121] ECF Doc. No. 1 ¶ 44.

[122] 42 U.S.C. § 2000e–2(a).

[123] *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 200 (3d Cir. 2018).

[124] *Morgan v. Fiorentino*, 811 F. App'x 798, 803 (3d Cir. 2020) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

[125] *Id.* (citing *Makky*, 541 F.3d at 214).

---

[126] *Hatch*, 755 F. App'x at 200 (citing *McDonnell Douglas*, 411 U.S. at 802).

[127] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03).

[128] *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 721 (E.D. Pa. 2021) (internal quotations omitted).

[129] *Id.* (internal citations omitted).

[130] *Id.* at 721–22.

[131] *Id.*

[132] *Id.* at 722.

[133] *Id.*

[134] It is unclear whether Ms. Finizie is asserting a separate claim of gender and age discrimination based solely on the Department issuing her two late performance evaluations. We find she fails to state a *prima facie* case assuming she is asserting a separate claim because she cannot demonstrate she suffered an adverse employment action when the Department issued the late evaluations. An adverse employment action includes an action "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (internal citation omitted). Ms. Finizie has not shown the late evaluations had any material alterations on her compensation, terms, conditions, or privileges of her employment. *See Ponton v. AFSCME*, 395 F. App'x 867, 874 (3d Cir. 2010) (holding generally satisfactory evaluation did not constitute a materially adverse action). Ms. Finizie only presents evidence how generally "late, or untimely, evaluations **can** have a detrimental effect on an employee's record and advancement within [the Department]." *See* ECF Doc. No. 29-1 at 13 (emphasis added). Even if we consider the late evaluations an adverse action, Ms. Finizie offers no evidence the Department issued the late performance evaluations or rated her differently than other similarly situated individuals because of her age or gender. To the extent Ms. Finizie argues the late performance evaluations and her not being selected for the vacancies are linked, we address this above and find the evidence fails to support such a causal connection given Dr. Schoen's unrebutted testimony.

[135] ECF Doc. No. 29-1 at 13.

[136] ECF Doc. No. 29-3 at 11; ECF Doc. No 26 at 77–78.

[137] ECF Doc. No. 29-3 at 51–52.

[138] *Id.*

[139] *Id.*

[140] *Fusco v. Bucks Cnty. of Pennsylvania*, No. 08-2082, 2009 WL 4911938, at *13 (E.D. Pa. Dec. 18, 2009).

[141] *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 676 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12-5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd,* 769 F. App'x 57 (3d Cir. 2019) ("In the context of employment discrimination claims, conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment." (internal quotations omitted)). In *Larochelle*, Judge Stengel recognized "[a]n affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden" of establishing a *prima facie* case in retaliation claim under the American with Disabilities Act. *Id.* at 706–07 (internal quotations omitted).

[142] ECF Doc. No. 24 at 16–17.

[143] *James*, 468 F. App'x at 121 (internal citations omitted).

[144] ECF Doc. No. 1 ¶¶ 47–53.

[145] ECF Doc. No 29-1 at 12–13.

[146] 29 U.S.C. § 623(a)(1).

[147] *Gress v. Temple Univ. Health Sys.*, 784 F. App'x 100, 104 (3d Cir. 2019).

[148] *Borzak v. City of Bethlehem*, No. 19-5716, 2021 WL 6073095, at *12 (E.D. Pa. Dec. 23, 2021) (internal citations omitted); *see also McDonnell Douglas*, 411 U.S. at 802.

[149] *Id.* (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

[150] *Gardner v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 21-3422, 2022 WL 3647824, at *8 (E.D. Pa. Aug. 24, 2022).

[151] *Smith v. City of Allentown,* 589 F.3d 684, 690 (3d Cir. 2009).

[152] *Id.*

[153] *Gardner*, 2022 WL 3647824, at *8.

[154] *Id.*

[155] *Id.*

[156] *Id.*

[157] *Id.*

[158] ECF Doc. No. 24 at 3.

[159] *Gardner*, 2022 WL 3647824, at *8.

[160] ECF Doc. No. 29-3 at 51–52.